**Opinion filed September 2, 2010**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00043-CR & 11-09-00044-CR

_____

### ERVIN DUANE WILLCOXSON, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court Cause Nos. 10118 & 10119**

### M E M O R A N D U M   O P I N I O N

In Cause No. 11-09-00043-CR, the jury convicted Ervin Duane Willcoxson of attempted aggravated sexual assault.  The jury assessed punishment, enhanced by a prior felony conviction, at twenty-five years confinement.  In Cause No. 11-09-00044-CR, the jury convicted appellant of injury to an elderly individual.  The jury assessed punishment, enhanced by a prior felony conviction, at confinement for five years.  The trial court sentenced appellant accordingly and

ordered that the sentences run concurrently. In two appellate issues, appellant challenges the factual sufficiency of the evidence to support his convictions. We affirm.

## *The Charged Offenses*

A person commits the offense of attempted aggravated sexual assault if, with specific intent to commit aggravated sexual assault, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003), § 22.021 (Vernon Supp. 2009). In Cause No. 11-09-00043-CR, the indictment alleged that, on or about July 14, 2007, appellant committed the offense of attempted aggravated sexual assault as follows:

> [Appellant] did then and there with specific intent to commit the offense of Aggravated Sexual Assault of Nancy Stverak, do an act, to-wit: pushing her onto a bed, holding her down, pulling her pants down to her knees, threatening to shoot her with a gun and trying to have sexual intercourse with her by force, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

*See* Section 22.021(a)(1)(A)(i), (a)(2)(A)(ii)-(iii), and (a)(2)(C). In Cause No. 11-09-00044-CR, the indictment alleged that, on or about July 14, 2007, appellant committed the offense of injury to an elderly individual as follows:

> [Appellant] did then and there intentionally or knowingly cause bodily injury to Nancy Stverak, an individual 65 years of age or older, by shoving her or pushing her or holding her down on a bed.

*See* TEX. PENAL CODE ANN. § 22.04(a)(3), (f) (Vernon Supp. 2009).

## *Issues on Appeal*

Appellant presents two issues for review. In his first issue, he contends that the evidence was factually insufficient to support his conviction for attempted aggravated sexual assault. In his second issue, he contends that the evidence was factually insufficient to support his conviction for injury to an elderly individual.

## *Standard of Review*

To determine if the evidence is factually sufficient, an appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing

court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

*Evidence at Trial*

The State called five witnesses: (1) Nancy Stverak; (2) Kristina Nylander; (3) Jones County Deputy Sheriff James Torres; (4) Department of Public Safety Trooper Vernon Davis; and (5) Constance Patton, a senior forensic biologist and DNA technical leader for the Tarrant County Medical Examiners' Office Crime Laboratory. Appellant called four witnesses: (1) Timothy Brian Stverak; (2) Terry Pelton; (3) Donnelle Pelton; and (4) Karla Willcoxson.

*State's Witnesses.*

Nancy Stverak testified that she was seventy-four years old on July 14, 2007, which was the date of the offense alleged in the indictments. Appellant was married to Nancy's daughter, Karla. Nancy lived with Karla, appellant, and their daughter, Kayla, at their home in Hawley, Texas. Kristina Nylander lived in a home nearby.

Nancy testified that, on July 14, 2007, at about 2:30 p.m., Karla left home and went to work at a cafe. Nancy said that, at about 7:00 or 7:30 p.m., she drove Kayla to the cafe so that Kayla could help Karla. Nancy said that she returned home and watched television with appellant in the living room for a brief period of time. She said that she sat on the couch and that appellant, who was wearing only boxer shorts, sat in a chair. Nancy testified that she was wearing a V-neck pullover shirt and capri pants. She said that the shirt belonged to her. She said that, at about 8:00 or 8:30 p.m., she went to her bedroom to change into her nightclothes.

Nancy testified that, when she started to shut the bedroom door behind her, "[appellant] was right there" and would not let her close the door. Nancy said that appellant told her, "I'm going to f--k you, Nanan." She said that Kayla called her "Nanan." Nancy testified that "[appellant] grabbed [her] and he would push [her] and jerk [her] around and he pushed [her] down on the bed." Nancy described the attack as "violent." She said that, at one time, "[her] head and almost [her] whole torso [were] hanging backwards off the bed almost to the floor." She testified that appellant had one arm around her legs and that he tried to pull her pants down

3

with his other arm. She said that "he just tussled me around all over the room." Nancy said that she fought appellant, kicked him, and tried to bite him and scratch him. She said that appellant was "jerking [her] and throwing [her] around." She testified that her glasses were knocked off during the struggle.

Nancy testified that she was terrified. She said that appellant told her that he was "going to get a gun to kill [her] and then he was going to kill himself." Nancy said that appellant managed to pull her capri pants and panties down to her mid-thigh. She said that she bit appellant and that he told her not to bite him. Nancy testified that, at some point, appellant ejaculated on her side, her shirt, and her bedspread. She said that she could see appellant's penis sticking through the front of his shorts. Nancy testified that she "managed to get [her] leg loose" and that she kicked him and got away. She testified that she grabbed her nightclothes and ran out of the bedroom. She said that she ran into the bathroom, locked the door, took a shower, and then put on her nightclothes. Nancy said that, after taking the shower, she did not see appellant in the house. She said that she returned to her bedroom and put the capri pants and pullover shirt on the hamper. She testified that she put on a flannel shirt over her nightclothes and left the house.

Nancy testified that she intended to go see Kristina at her house but that Kristina was not home. Nancy said that she drove to a convenience store and that she saw Kristina there. Kristina testified that, at that time, Nancy was "physically shaking." Kristina said that Nancy told her that appellant had tried to rape her and that appellant had said that he was going to take a gun and shoot her and himself. Nancy and Kristina went to Kristina's house. Kristina called Karla and asked her to come over. Nancy testified that Karla came to Kristina's house. Nancy said that she told Karla what appellant had done to her and that Karla was in "[s]hock, almost hysterical, crying, upset, [and] frightened." Nancy testified that, at that time, she was experiencing hip pain and that the pain was worse the next day.

Kristina testified that she called the sheriff's department. Jones County Deputy Sheriff James Torres responded to the call. Nancy told Deputy Torres what had happened to her. Deputy Torres testified that Nancy told him that appellant had threatened to shoot her and kill himself. Deputy Torres testified that he did not see any scratches, bruises, or marks on Nancy. Deputy Torres said that Karla believed that a shotgun and possibly a rifle were in the Willcoxson residence. Department of Public Safety Trooper Vernon Davis arrived at the scene to assist

4

Deputy Torres. The officers went to the Willcoxson residence to talk to appellant. They knocked on the door, but appellant did not answer. Deputy Torres returned to Kristina's residence and obtained consent from Karla to enter the Willcoxson residence.

Deputy Torres and Trooper Davis entered appellant's residence. They found appellant in bed with his eyes closed. Deputy Torres testified that appellant "appeared to be pretending to be asleep." Deputy Torres said that he and Trooper Davis "hollered at [appellant]" and that he asked appellant to get up but that appellant would not do so. Deputy Torres said that appellant finally "woke up" when they went over and shook him.

Trooper Davis testified that appellant was wearing boxer shorts. The officers took appellant outside to the front porch of the house, advised him of his rights, and then questioned him. Appellant told Deputy Torres something to the effect that "things just got out of hand." Appellant also said that he did not remember what had happened that evening because he had been drinking and was intoxicated. Deputy Torres testified that he did not smell any alcohol on appellant and that he did not believe appellant was intoxicated. Trooper Davis testified that he did not smell any alcohol on appellant. Trooper Davis said that he administered an HGN test on appellant, that the test did not reveal any intoxication clues, and that he did not believe appellant was intoxicated. Trooper Davis testified that he saw fresh wounds on appellant's left jaw line and on the top of appellant's forehead at the hairline. He said that appellant had what appeared to be dried blood on his neck. Deputy Torres testified that he observed some scratches on appellant's forehead, underneath his chin, and on his left jaw. Deputy Torres said that he did not notice any bite marks on appellant. Appellant was arrested and taken to jail. The officers' questioning of appellant on the porch was videotaped by a camera in Deputy Torres's vehicle, and the videotape was played for the jury. The videotape demonstrates that appellant told the officers, "Things got out of hand."

Nancy told Deputy Torres that the shirt she was wearing during the attack and her bedspread might have semen on them. Deputy Torres testified that Nancy showed him the bedroom where the attack had occurred. Deputy Torres said that Nancy's bedroom was not in disarray except for the bedspread being "just a little bit" in disarray. Deputy Torres testified that he took the bedspread from the bed and that Nancy retrieved the shirt from the hamper and gave it to him. Deputy Torres said that he placed the shirt and bedspread into bags. The shirt and

bedspread were sent to the Tarrant County Medical Examiners' Office Crime Laboratory for testing.

Nancy testified that her hip and back were hurting the next day. Kristina testified that Nancy "was having marked difficulty walking" and that Nancy complained all day that "she was hurting more and more." Kristina drove her to the emergency room at Hendrick Medical Center where she was examined. Nancy testified that she had bruises and contusions. She said that she was concerned that a prosthesis she had received in hip replacement surgery had been damaged during the attack. Nancy's medical records indicated that she had a left hip contusion. Nancy testified that her pain persisted for one and one-half to two weeks.

Kristina testified that Nancy told her that she had bitten appellant on the face, mouth, and tongue and that she had scratched him on the neck. Kristina said that she saw appellant a day or two after the alleged attack. Kristina testified that she asked appellant to take off his shirt so that she could see whether he had any scratches on his body and that, when appellant did so, she did not see any scratches.

Constance Patton testified about DNA testing that was performed at the Tarrant County Medical Examiners' Office Crime Laboratory. The laboratory had received a shirt and a bedspread, as well as buccal swabs that had been taken from appellant. Testing of the shirt revealed the presence of phosphatase and spermatozoa, which confirmed the presence of semen. Because testing of the shirt showed the presence of semen, the bedspread was not tested. Patton testified that she performed a DNA analysis on the semen stain taken from the shirt and on the buccal swabs taken from appellant. Based on her analyses, Patton concluded that the DNA profile from the sperm specimen on the shirt matched appellant's DNA profile. Patton testified that the probability of selecting an unrelated individual having the same genetic profile as appellant was about 1 in 4.8 quadrillion Caucasians. Patton said that "[i]t is my opinion to a reasonable degree of scientific certainty that the DNA contributor to the semen stain was [appellant]."

*Appellant's Witnesses.*

Timothy Brian Stverak is Nancy's son. He testified that, on or about July 14, 2007, he became aware of Nancy's accusation against appellant. Timothy testified that Nancy told him that she had scratched appellant on his chest and arms and that she had bitten him on the lip. Timothy testified that he and Kristina saw appellant a day or two later. Timothy said that he and

6

Kristina asked appellant to raise up his shirt so that they could look at him and that, when appellant did so, he did not see any scratch marks on appellant other than a cut on his forehead that had been caused when appellant had been hurt by a horse. Timothy said that he did not see any bite marks on appellant's lip or cheek.

Terry Pelton testified that, on July 14, 2007, appellant helped him move a horse to his land. Terry said that the horse reared up, hit appellant in the head, and knocked him to the ground. Terry said that appellant had a cut on his forehead and that appellant's head was bleeding after the incident. Terry's wife, Donnelle Pelton, provided similar testimony about the incident involving the horse.

Karla testified that she and appellant had been married for more than fifteen years. She said that, on July 14, 2007, she worked at the cafe. She said that she got home from work between 9:00 and 10:00 p.m. Karla said that appellant was home when she got there. She said that appellant sat down at the table with her while she ate dinner. Karla said that appellant was wearing shorts and that he was not wearing a shirt. She testified that appellant showed her a cut on his head that he had received in the horse incident. She said that she did not notice any scratches or cuts on appellant's face or jaw, bite marks on his face or lip, or any scratches on his body. She said that appellant had been drinking and that she smelled alcohol on him.

Karla testified that she received a telephone call from Kristina. Karla said that Kristina asked her to bring coffee to her house. Karla and her daughter, Kayla, then went to Kristina's house. Karla said that Nancy was present at the house and that Nancy was crying. Nancy told Karla that appellant had tried to sexually assault her. Karla testified that she did not see any scratches, bruises, or marks of any kind on Nancy.

Karla testified about the shirt that Nancy had given to Deputy Torres. Karla said that the shirt belonged to her and that Nancy had given it to her as a hand-me-down. She said that, on July 14, 2007, the shirt was in her bedroom and that she had slept in it the night before. When asked how appellant's semen could have gotten on the shirt, Karla testified that she and appellant could have cleaned themselves with it after having sex. Karla believed that Nancy somehow knew that appellant's sperm was on the shirt and "set him up."

*Analysis*

In his first issue, appellant challenges the factual sufficiency of the evidence to support his conviction for attempted aggravated sexual assault. In essence, appellant asserts that the

7

evidence is factually insufficient to support his conviction because Nancy's claim that he violently attacked her was not corroborated by any physical evidence. In the absence of such corroborating evidence, appellant contends that a jury could not have rationally concluded that the attack occurred. Appellant relies on the testimony of witnesses that they did not see any scratches or marks on Nancy or him. He also relies on Deputy Torres's testimony that the bedroom was not in disarray. Appellant states in his brief that "[s]imply stated, it stands to reason, in <u>this</u> case, in light of <u>this</u> complainant's specific testimony, the lack of any corroborating evidence renders the jury's verdict irrational."

The uncorroborated testimony of a sexual assault victim alone is sufficient to support a conviction for the sexual assault offense. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon 2005). Nancy's testimony is set forth in detail above. That testimony, if believed by the jury, was sufficient to support appellant's conviction for attempted aggravated sexual assault. *Id.* As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the jury was free to believe Nancy's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Hawkins v. State*, 283 S.W.3d 429, 434 (Tex. App.—Eastland 2009, pet. ref'd).

In addition, the State presented evidence that corroborated Nancy's testimony that appellant attempted to sexually assault her. First, the DNA evidence corroborated Nancy's testimony that appellant ejaculated on her shirt. Karla had a different explanation as to how appellant's semen could have gotten on the shirt. However, the jury was free to believe Nancy's testimony and to disbelieve Karla's testimony. *Sharp*, 707 S.W.2d at 614. Second, Deputy Torres testified that he saw a scratch on appellant's left jaw. Third, appellant's statement to the officers that "things just got out of hand" corroborated Nancy's testimony.

We find that the evidence was factually sufficient to support appellant's conviction for attempted aggravated sexual assault. The evidence supporting the verdict was not so weak that the verdict was clearly wrong and manifestly unjust, nor was the verdict against the great weight and preponderance of the conflicting evidence. Appellant's first issue is overruled.

In his second issue, appellant challenges the factual sufficiency of the evidence to support his conviction for injury to an elderly individual. Appellant again relies on a lack of corroborating physical evidence to support Nancy's claim that a violent attack occurred. Appellant asserts in his brief that "where, as in this case, there is a complete dearth of corroborating physical evidence of bodily injury after an attack graphically described by the

victim as horribly violent, it stands to reason that a jury could not have rationally concluded that such an attack occurred." Based on this assertion, appellant contends that the evidence of bodily injury was so weak that the jury's verdict was clearly wrong and manifestly unjust and that the jury's verdict was against the great weight and preponderance of the conflicting evidence.

"Bodily injury" is defined as physical pain, illness, or any impairment of physical condition. TEX. PENAL CODE ANN. § 1.07(a)(8) (Vernon Supp. 2009). Bodily injury may be proven by the victim's testimony that she suffered physical pain. *Lane v. State*, 763 S.W.2d 785, 786-87 (Tex. Crim. App. 1989); *Allen v. State*, 533 S.W.2d 352, 354 (Tex. Crim. App. 1976); *Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975). Nancy testified that she experienced hip pain on the night of the attack and that her pain was worse the following day. She said that she went to the emergency room the day after the attack and that, at that time, she had hip and back pain. She said that she had bruises and contusions from the attack. Nancy testified that her pain persisted for one and one-half to two weeks. Other evidence was consistent with Nancy's testimony that she experienced physical pain after the attack. Kristina testified that Nancy had marked difficulty walking. The medical records showed that Nancy had a left hip contusion. The evidence was factually sufficient to establish that Nancy suffered physical pain and that, therefore, appellant caused bodily injury to her. *Lane*, 763 S.W.2d at 786-87.

We find that the evidence was factually sufficient to support appellant's conviction for injury to an elderly individual. The evidence supporting the verdict was not so weak that the verdict was clearly wrong and manifestly unjust, nor was the verdict against the great weight and preponderance of the conflicting evidence. Appellant's second issue is overruled.

*This Court's Ruling*

The judgments of the trial court are affirmed.

TERRY McCALL
JUSTICE

September 2, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.