Opinion filed September 2,
2010

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                     No. 11-09-00043-CR & 11-09-00044-CR 

                                                    __________

 

                          ERVIN
DUANE WILLCOXSON, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 259th District Court

 

                                                             Jones
County, Texas

 

                                             Trial Court
Cause Nos. 10118 & 10119

 



 

                                            M
E M O R A N D U M   O P I N I O N

            In
Cause No. 11-09-00043-CR, the jury convicted Ervin Duane Willcoxson of
attempted aggravated sexual assault.  The jury assessed punishment, enhanced by
a prior felony conviction, at twenty-five years confinement.  In Cause No.
11-09-00044-CR, the jury convicted appellant of injury to an elderly
individual.  The jury assessed punishment, enhanced by a prior felony conviction,
at confinement for five years.  The trial court sentenced appellant accordingly
and ordered that the sentences run concurrently.  In two appellate issues,
appellant challenges the factual sufficiency of the evidence to support his
convictions.  We affirm.

The
Charged Offenses

            A
person commits the offense of attempted aggravated sexual assault if, with
specific intent to commit aggravated sexual assault, he does an act amounting
to more than mere preparation that tends but fails to effect the commission of
the aggravated sexual assault.  See Tex.
Penal Code Ann. § 15.01(a) (Vernon 2003), § 22.021 (Vernon Supp. 2009). 
In Cause No. 11-09-00043-CR, the indictment alleged that, on or about July
14, 2007, appellant committed the offense of attempted aggravated sexual
assault as follows:

[Appellant] did then
and there with specific intent to commit the offense of Aggravated Sexual Assault
of Nancy Stverak, do an act, to-wit: pushing her onto a bed, holding her down, pulling
her pants down to her knees, threatening to shoot her with a gun and trying to
have sexual intercourse with her by force, which amounted to more than mere
preparation that tended but failed to effect the commission of the offense
intended.

 

See Section
22.021(a)(1)(A)(i), (a)(2)(A)(ii)-(iii), and (a)(2)(C).  In Cause No. 11-09-00044-CR,
the indictment alleged that, on or about July 14, 2007, appellant committed the
offense of injury to an elderly individual as follows:

[Appellant] did then
and there intentionally or knowingly cause bodily injury to Nancy Stverak, an
individual 65 years of age or older, by shoving her or pushing her or holding
her down on a bed.

 

See Tex. Penal Code Ann. § 22.04(a)(3), (f)
(Vernon Supp. 2009).

Issues
on Appeal

            Appellant
presents two issues for review.  In his first issue, he contends that the
evidence was factually insufficient to support his conviction for attempted
aggravated sexual assault.  In his second issue, he contends that the evidence
was factually insufficient to support his conviction for injury to an elderly
individual.

Standard
of Review

            To
determine if the evidence is factually sufficient, an appellate court reviews
all of the evidence in a neutral light.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State, 144
S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex.
Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Then, the reviewing court determines whether the evidence supporting
the verdict is so weak that the verdict is clearly wrong and manifestly unjust
or whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.  The jury, as the finder of fact, is the sole judge of the
weight and credibility of the witnesses’ testimony.  Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art.
38.04 (Vernon 1979).

Evidence
at Trial

The
State called five witnesses: (1) Nancy Stverak; (2) Kristina Nylander; (3)
Jones County Deputy Sheriff James Torres; (4) Department of Public Safety
Trooper Vernon Davis; and (5) Constance Patton, a senior forensic biologist and
DNA technical leader for the Tarrant County Medical Examiners’ Office Crime
Laboratory.  Appellant called four witnesses: (1) Timothy Brian Stverak;
(2) Terry Pelton; (3) Donnelle Pelton; and (4) Karla Willcoxson.

State’s
Witnesses.

Nancy
Stverak testified that she was seventy-four years old on July 14, 2007, which
was the date of the offense alleged in the indictments.  Appellant was married
to Nancy’s daughter, Karla.  Nancy lived with Karla, appellant, and their
daughter, Kayla, at their home in Hawley, Texas.  Kristina Nylander lived in a
home nearby.

Nancy
testified that, on July 14, 2007, at about 2:30 p.m., Karla left home and went
to work at a cafe.  Nancy said that, at about 7:00 or 7:30 p.m., she drove
Kayla to the cafe so that Kayla could help Karla.  Nancy said that she returned
home and watched television with appellant in the living room for a brief
period of time.  She said that she sat on the couch and that appellant, who was
wearing only boxer shorts, sat in a chair.  Nancy testified that she was
wearing a V-neck pullover shirt and capri pants.  She said that the shirt
belonged to her.  She said that, at about 8:00 or 8:30 p.m., she went to her bedroom
to change into her nightclothes.

Nancy
testified that, when she started to shut the bedroom door behind her, “[appellant]
was right there” and would not let her close the door.  Nancy said that
appellant told her, “I’m going to f--k you, Nanan.” She said that Kayla called
her “Nanan.” Nancy testified that “[appellant] grabbed [her] and he would push [her]
and jerk [her] around and he pushed [her] down on the bed.”  Nancy described the
attack as “violent.”  She said that, at one time, “[her] head and almost [her]
whole torso [were] hanging backwards off the bed almost to the floor.”  She
testified that appellant had one arm around her legs and that he tried to pull
her pants down with his other arm.  She said that “he just tussled me around
all over the room.”  Nancy said that she fought appellant, kicked him, and
tried to bite him and scratch him.  She said that appellant was “jerking [her]
and throwing [her] around.”  She testified that her glasses were knocked off
during the struggle.

Nancy
testified that she was terrified.  She said that appellant told her that he was
“going to get a gun to kill [her] and then he was going to kill himself.”  Nancy
said that appellant managed to pull her capri pants and panties down to her
mid-thigh.  She said that she bit appellant and that he told her not to bite
him.  Nancy testified that, at some point, appellant ejaculated on her side,
her shirt, and her bedspread.  She said that she could see appellant’s penis
sticking through the front of his shorts.  Nancy testified that she “managed to
get [her] leg loose” and that she kicked him and got away.  She testified that
she grabbed her nightclothes and ran out of the bedroom.  She said that she ran
into the bathroom, locked the door, took a shower, and then put on her nightclothes. 
Nancy said that, after taking the shower, she did not see appellant in the
house.  She said that she returned to her bedroom and put the capri pants and
pullover shirt on the hamper.  She testified that she put on a flannel shirt
over her nightclothes and left the house.

Nancy
testified that she intended to go see Kristina at her house but that Kristina was
not home.  Nancy said that she drove to a convenience store and that she saw Kristina
there.  Kristina testified that, at that time, Nancy was “physically shaking.”  Kristina
said that Nancy told her that appellant had tried to rape her and that
appellant had said that he was going to take a gun and shoot her and himself.  Nancy
and Kristina went to Kristina’s house.  Kristina called Karla and asked her to
come over.  Nancy testified that Karla came to Kristina’s house.  Nancy said
that she told Karla what appellant had done to her and that Karla was in
“[s]hock, almost hysterical, crying, upset, [and] frightened.”  Nancy testified
that, at that time, she was experiencing hip pain and that the pain was worse
the next day.

Kristina
testified that she called the sheriff’s department.  Jones County Deputy
Sheriff James Torres responded to the call.  Nancy told Deputy Torres what had
happened to her. Deputy Torres testified that Nancy told him that appellant had
threatened to shoot her and kill himself.  Deputy Torres testified that he did
not see any scratches, bruises, or marks on Nancy. Deputy Torres said that
Karla believed that a shotgun and possibly a rifle were in the Willcoxson
residence.  Department of Public Safety Trooper Vernon Davis arrived at the
scene to assist Deputy Torres.  The officers went to the Willcoxson residence to
talk to appellant.  They knocked on the door, but appellant did not answer. 
Deputy Torres returned to Kristina’s residence and obtained consent from Karla
to enter the Willcoxson residence.

Deputy
Torres and Trooper Davis entered appellant’s residence.  They found appellant
in bed with his eyes closed.  Deputy Torres testified that appellant “appeared
to be pretending to be asleep.”  Deputy Torres said that he and Trooper Davis
“hollered at [appellant]” and that he asked appellant to get up but that
appellant would not do so.  Deputy Torres said that appellant finally “woke up”
when they went over and shook him.

            Trooper
Davis testified that appellant was wearing boxer shorts.  The officers took
appellant outside to the front porch of the house, advised him of his rights,
and then questioned him.  Appellant told Deputy Torres something to the effect that
“things just got out of hand.”  Appellant also said that he did not remember
what had happened that evening because he had been drinking and was
intoxicated.  Deputy Torres testified that he did not smell any alcohol on appellant
and that he did not believe appellant was intoxicated.  Trooper Davis testified
that he did not smell any alcohol on appellant.  Trooper Davis said that he
administered an HGN test on appellant, that the test did not reveal any
intoxication clues, and that he did not believe appellant was intoxicated.  Trooper
Davis testified that he saw fresh wounds on appellant’s left jaw line and on
the top of appellant’s forehead at the hairline.  He said that appellant had what
appeared to be dried blood on his neck.  Deputy Torres testified that he
observed some scratches on appellant’s forehead, underneath his chin, and on
his left jaw.  Deputy Torres said that he did not notice any bite marks on
appellant.  Appellant was arrested and taken to jail.  The officers’
questioning of appellant on the porch was videotaped by a camera in Deputy
Torres’s vehicle, and the videotape was played for the jury.  The videotape
demonstrates that appellant told the officers, “Things got out of hand.”

            Nancy
told Deputy Torres that the shirt she was wearing during the attack and her bedspread
might have semen on them.  Deputy Torres testified that Nancy showed him the
bedroom where the attack had occurred.  Deputy Torres said that Nancy’s bedroom
was not in disarray except for the bedspread being “just a little bit” in
disarray.  Deputy Torres testified that he took the bedspread from the bed and that
Nancy retrieved the shirt from the hamper and gave it to him.  Deputy Torres said
that he placed the shirt and bedspread into bags.  The shirt and bedspread were
sent to the Tarrant County Medical Examiners’ Office Crime Laboratory for testing.

            Nancy
testified that her hip and back were hurting the next day.  Kristina testified
that Nancy “was having marked difficulty walking” and that Nancy complained all
day that “she was hurting more and more.”  Kristina drove her to the emergency
room at Hendrick Medical Center where she was examined.  Nancy testified that
she had bruises and contusions.  She said that she was concerned that a prosthesis
she had received in hip replacement surgery had been damaged during the attack. 
Nancy’s medical records indicated that she had a left hip contusion.  Nancy testified
that her pain persisted for one and one-half to two weeks.

            Kristina
testified that Nancy told her that she had bitten appellant on the face, mouth,
and tongue and that she had scratched him on the neck.  Kristina said that she saw
appellant a day or two after the alleged attack.  Kristina testified that she
asked appellant to take off his shirt so that she could see whether he had any
scratches on his body and that, when appellant did so, she did not see any
scratches.

            Constance
Patton testified about DNA testing that was performed at the Tarrant County
Medical Examiners’ Office Crime Laboratory.  The laboratory had received a
shirt and a bedspread, as well as buccal swabs that had been taken from
appellant.  Testing of the shirt revealed the presence of phosphatase and spermatozoa,
which confirmed the presence of semen.  Because testing of the shirt showed the
presence of semen, the bedspread was not tested.  Patton testified that she
performed a DNA analysis on the semen stain taken from the shirt and on the
buccal swabs taken from appellant.  Based on her analyses, Patton concluded
that the DNA profile from the sperm specimen on the shirt matched appellant’s
DNA profile.  Patton testified that the probability of selecting an unrelated
individual having the same genetic profile as appellant was about 1 in 4.8
quadrillion Caucasians.  Patton said that “[i]t is my opinion to a reasonable
degree of scientific certainty that the DNA contributor to the semen stain was
[appellant].”

Appellant’s
Witnesses.

            Timothy
Brian Stverak is Nancy’s son.  He testified that, on or about July 14, 2007, he
became aware of Nancy’s accusation against appellant.  Timothy testified that Nancy
told him that she had scratched appellant on his chest and arms and that she
had bitten him on the lip. Timothy testified that he and Kristina saw appellant
a day or two later.  Timothy said that he and Kristina asked appellant to raise
up his shirt so that they could look at him and that, when appellant did so, he
did not see any scratch marks on appellant other than a cut on his forehead
that had been caused when appellant had been hurt by a horse.  Timothy said
that he did not see any bite marks on appellant’s lip or cheek.

            Terry
Pelton testified that, on July 14, 2007, appellant helped him move a horse to
his land.  Terry said that the horse reared up, hit appellant in the head, and
knocked him to the ground.  Terry said that appellant had a cut on his forehead
and that appellant’s head was bleeding after the incident.  Terry’s wife,
Donnelle Pelton, provided similar testimony about the incident involving the
horse.

            Karla
testified that she and appellant had been married for more than fifteen years. 
She said that, on July 14, 2007, she worked at the cafe.  She said that she got
home from work between 9:00 and 10:00 p.m.  Karla said that appellant was home
when she got there.  She said that appellant sat down at the table with her
while she ate dinner.  Karla said that appellant was wearing shorts and that he
was not wearing a shirt.  She testified that appellant showed her a cut on his
head that he had received in the horse incident.  She said that she did not notice
any scratches or cuts on appellant’s face or jaw, bite marks on his face or lip,
or any scratches on his body.  She said that appellant had been drinking and that
she smelled alcohol on him.

            Karla
testified that she received a telephone call from Kristina.  Karla said that Kristina
asked her to bring coffee to her house.  Karla and her daughter, Kayla, then
went to Kristina’s house.  Karla said that Nancy was present at the house and
that Nancy was crying.  Nancy told Karla that appellant had tried to sexually
assault her.  Karla testified that she did not see any scratches, bruises, or
marks of any kind on Nancy.

            Karla
testified about the shirt that Nancy had given to Deputy Torres.  Karla said
that the shirt belonged to her and that Nancy had given it to her as a
hand-me-down.  She said that, on July 14, 2007, the shirt was in her bedroom
and that she had slept in it the night before.  When asked how appellant’s
semen could have gotten on the shirt, Karla testified that she and appellant could
have cleaned themselves with it after having sex.  Karla believed that Nancy somehow
knew that appellant’s sperm was on the shirt and “set him up.”

Analysis

            In
his first issue, appellant challenges the factual sufficiency of the evidence
to support his conviction for attempted aggravated sexual assault.  In essence,
appellant asserts that the evidence is factually insufficient to support his
conviction because Nancy’s claim that he violently attacked her was not
corroborated by any physical evidence.  In the absence of such corroborating
evidence, appellant contends that a jury could not have rationally concluded
that the attack occurred.  Appellant relies on the testimony of witnesses that
they did not see any scratches or marks on Nancy or him.  He also relies on
Deputy Torres’s testimony that the bedroom was not in disarray.  Appellant
states in his brief that “[s]imply stated, it stands to reason, in this
case, in light of this complainant’s specific testimony, the lack of any
corroborating evidence renders the jury’s verdict irrational.”

            The
uncorroborated testimony of a sexual assault victim alone is sufficient to
support a conviction for the sexual assault offense.  Tex. Code Crim. Proc. Ann. art. 38.07(a) (Vernon 2005).  Nancy’s
testimony is set forth in detail above.  That testimony, if believed by the
jury, was sufficient to support appellant’s conviction for attempted aggravated
sexual assault.  Id.  As the sole judge of the credibility of the
witnesses and the weight to be given their testimony, the jury was free to
believe Nancy’s testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986); Hawkins v. State, 283 S.W.3d 429, 434 (Tex. App.—Eastland
2009, pet. ref’d).

            In
addition, the State presented evidence that corroborated Nancy’s testimony that
appellant attempted to sexually assault her.  First, the DNA evidence
corroborated Nancy’s testimony that appellant ejaculated on her shirt.  Karla had
a different explanation as to how appellant’s semen could have gotten on the
shirt.  However, the jury was free to believe Nancy’s testimony and to disbelieve
Karla’s testimony.  Sharp, 707 S.W.2d at 614.  Second, Deputy Torres
testified that he saw a scratch on appellant’s left jaw.  Third, appellant’s
statement to the officers that “things just got out of hand” corroborated Nancy’s
testimony.

            We
find that the evidence was factually sufficient to support appellant’s
conviction for attempted aggravated sexual assault.  The evidence supporting
the verdict was not so weak that the verdict was clearly wrong and manifestly
unjust, nor was the verdict against the great weight and preponderance of the
conflicting evidence.  Appellant’s first issue is overruled. 

            In
his second issue, appellant challenges the factual sufficiency of the evidence
to support his conviction for injury to an elderly individual.  Appellant again
relies on a lack of corroborating physical evidence to support Nancy’s claim
that a violent attack occurred.  Appellant asserts in his brief that “where, as
in this case, there is a complete dearth of corroborating physical evidence of
bodily injury after an attack graphically described by the victim as horribly
violent, it stands to reason that a jury could not have rationally concluded
that such an attack occurred.”  Based on this assertion, appellant contends
that the evidence of bodily injury was so weak that the jury’s verdict was
clearly wrong and manifestly unjust and that the jury’s verdict was against the
great weight and preponderance of the conflicting evidence.

            “Bodily
injury” is defined as physical pain, illness, or any impairment of physical
condition.  Tex. Penal Code Ann.
§ 1.07(a)(8) (Vernon Supp. 2009).  Bodily injury may be proven by the victim’s
testimony that she suffered physical pain.  Lane v. State, 763 S.W.2d
785, 786-87 (Tex. Crim. App. 1989); Allen v. State, 533 S.W.2d 352, 354
(Tex. Crim. App. 1976); Lewis v. State, 530 S.W.2d 117, 118 (Tex. Crim.
App. 1975).  Nancy testified that she experienced hip pain on the night of the
attack and that her pain was worse the following day.  She said that she went
to the emergency room the day after the attack and that, at that time, she had
hip and back pain.  She said that she had bruises and contusions from the
attack.  Nancy testified that her pain persisted for one and one-half to two
weeks.  Other evidence was consistent with Nancy’s testimony that she
experienced physical pain after the attack.  Kristina testified that Nancy had
marked difficulty walking.  The medical records showed that Nancy had a left
hip contusion.  The evidence was factually sufficient to establish that Nancy suffered
physical pain and that, therefore, appellant caused bodily injury to her.  Lane,
763 S.W.2d at 786-87.

We
find that the evidence was factually sufficient to support appellant’s
conviction for injury to an elderly individual.  The evidence supporting the
verdict was not so weak that the verdict was clearly wrong and manifestly
unjust, nor was the verdict against the great weight and preponderance of the
conflicting evidence.  Appellant’s second issue is overruled.

This
Court’s Ruling

            The judgments of the
trial court are affirmed.

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

September 2,
2010

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.