**Opinion filed July 19, 2012**



## In The

# Eleventh Court of Appeals

_____

### No. 11-10-00184-CR

_____

## SHOKO LANARDO CROWLEY, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 278th District Court**

**Walker County, Texas**

**Trial Court Cause No. 24865**

### MEMORANDUM OPINION

The jury convicted Shoko Lanardo Crowley of stalking. The trial court assessed his punishment at confinement for a term of eight years. We affirm.

### Issues on Appeal

Appellant does not challenge the sufficiency of the evidence to support his conviction. Appellant presents two issues for review. In his first issue, appellant contends that the trial court erred by overruling his objection to the State's jury argument during the guilt/innocence phase

and by denying his motion for new trial that was based on the allegedly improper jury argument. In his second issue, appellant contends that the trial court erred by admitting evidence of two extraneous offenses.

*The Charged Offense*

The State charged appellant with the offense of stalking under Section 42.072 of the Penal Code. *See* TEX. PENAL CODE ANN. § 42.072 (West Supp. 2011). Section 42.072 provides, in relevant part, as follows:

> (a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:
>
> > (1) the actor knows or reasonably believes the other person will regard as threatening:
> >
> > > (A) bodily injury or death for the other person; [or]
> > >
> > > . . . .
> > >
> > > (C) that an offense will be committed against the other person's property;
> >
> > (2) causes the other person . . . to be placed in fear of bodily injury or death or fear that an offense will be committed against the other person's property; and
> >
> > (3) would cause a reasonable person to fear:
> >
> > > (A) bodily injury or death for himself or herself; [or]
> > >
> > > . . . .
> > >
> > > (C) that an offense will be committed against the person's property.

*Id.* § 42.072(a).

In this case, the indictment identified four specific acts allegedly committed by appellant: (1) that, on or about September 24, 2008, appellant pushed Tanya Mwangi into a metal rail; (2) that, on or about September 26, 2008, appellant told Mwangi that he was going to shoot her; (3) that, on or about September 25, 2008, appellant told Mwangi that he was going to "f--k up

2

[her] car"; and (4) that, on or about September 24, 2008, appellant painted Mwangi's car. The State presented evidence supporting the first, third, and fourth alleged incidents. The State did not present any evidence in support of the second alleged incident, and the trial court did not include the second incident in its charge to the jury.

*The Evidence at Trial*

Although appellant does not challenge the sufficiency of the evidence to support his conviction, we will summarize the evidence to provide context for the issues on appeal.

In the fall of 2008, Mwangi was a student at Sam Houston State University in Huntsville. Mwangi testified that, at that time, she lived in an apartment at the Exchange of Huntsville student apartment complex. One evening in September 2008, Mwangi's roommate, Lauren Jackson, introduced Mwangi to appellant at the pool at the apartment complex. Mwangi later learned that Jackson had given Mwangi's cell phone number to appellant.

The following day, appellant sent Mwangi text messages and called her. Mwangi testified that the text messages were friendly. Mwangi said that, the next day, she and appellant talked again. She said that appellant asked her for directions to the Health and Kinesiology Center (HKC) on the campus of Sam Houston State University. Mwangi said that there were two gyms in the HKC. After talking with appellant, Mwangi went to the HKC and watched a basketball game to kill some time before her next class began. Mwangi testified that she saw appellant at the HKC about thirty minutes after she got there. Mwangi said that appellant told her he had been calling her but that she had not answered her phone. She testified that, before she could explain to appellant that there was no cell phone reception in the HKC, "he was in [her] face" and yelling at her. Mwangi said that some of her friends, including Joseph Sam, escorted her out the back door of the HKC and that she then went to her class. Sam testified that appellant followed Mwangi out the back door. Sam said that appellant was really mad and was yelling at Mwangi. Mwangi testified that appellant's conduct at the HKC scared her and that she did not know if appellant was going to hit her.

Mwangi also testified that appellant texted her after the incident at the HKC. She did not reply to his text messages. Mwangi said that she called appellant the following day and asked him to meet her at the pool at the Exchange because she wanted to tell him that she did not want to be his girlfriend. Mwangi wanted to meet appellant at the pool because it was a public place. She said that appellant met her at the pool. Mwangi testified that appellant appeared to be

agitated and that he became angry. Mwangi said that she told appellant she did not want to be his friend and that appellant responded, "[I]f you're not my friend you're my enemy." At that point, Mwangi turned around and walked toward her apartment. She said that appellant followed her from the pool area into a stairwell and that, as appellant followed her, he called her "all kinds of names" and cursed at her. Mwangi testified that appellant pushed her and that she fell onto a guard rail. Mwangi hurt her side in the incident. She got up, ran to her car, and then drove to the police station. The record shows that Mwangi reported this incident to the police on September 24, 2008, at about 10:30 p.m. At the station, Mwangi told an officer what had just happened and also what had happened at the HKC the day before. Sam and some of his friends met Mwangi at the police station. Sam testified that Mwangi was upset at the police station. Mwangi testified that, after she talked with the officer, Sam rode with her back to her apartment complex. When they arrived at the complex, Mwangi went straight to her apartment. Sam accompanied her to the apartment and then left.

Mwangi said that, when she saw her car the following morning, she discovered that it had been spray-painted with white paint. She reported the spray-painting incident to the police on September 25, 2008, at about 8:45 a.m. Huntsville Police Officer Mat McDaniel went to Mwangi's apartment and took a criminal mischief report from Mwangi. Officer McDaniel took pictures showing the spray paint on Mwangi's car. Mwangi testified that she received a threatening phone call from appellant after her car was spray-painted. On September 26, 2008, just after midnight, Mwangi called the police to report that she had received the threatening call. Sergeant David O'Rear of the Huntsville Police Department went to Mwangi's apartment to meet with her. Sergeant O'Rear testified that Mwangi believed that appellant was the person who had spray-painted her car. Mwangi told Sergeant O'Rear that appellant had called her and said, "[B]itch, I'm going to f--k up your car again for f-----g with my cousin." Mwangi told Sergeant O'Rear that appellant had pushed her against a rail at the apartment complex. Mwangi showed Sergeant O'Rear injuries on her right side, and he took pictures of her right side.

Mwangi testified that she started getting phone calls from a private (blocked) number. She said that she got a "whole bunch of phone calls" from the private number. Mwangi said that she did not answer the calls. Mwangi testified that appellant's conduct scared her and her roommates. Mwangi said that she bought a knife and pepper spray because she thought that appellant was going to attack her.

4

On September 30, 2008, Mwangi's car was spray-painted again while she was at work at Hastings. At about 9:30 a.m. that morning, Huntsville Police Officer Joe Thornton was dispatched to Hastings on a report of criminal mischief. After arriving at Hastings, Officer Thornton spoke with Mwangi. She believed that appellant had spray-painted her car. Officer Thornton said that he saw metallic gold spray paint on Mwangi's car. He took pictures of the car.

Mwangi said that, on another occasion, her car had been "keyed" while she was at work. Huntsville Police Officer Kurt Bubela testified that, on October 11, 2008, he was dispatched to Hastings in reference to a criminal mischief call. He arrived at Hastings and talked with Mwangi. Officer Bubela also looked at Mwangi's car. Officer Bubela testified that he observed "deep" scratches on the driver's side of Mwangi's car and that her car had been "keyed." Officer Bubela took pictures of the car. Mwangi believed that appellant had "keyed" her car. Mwangi testified that, during the time period that was relevant to this case, she did not have problems with anyone but appellant.

Huntsville Police Detective Gary Shearer testified that he became involved in the investigation of this case on September 29, 2008. On that date, Detective Shearer met with Mwangi. At that time, Mwangi was afraid. Mwangi gave appellant's phone number to the police department. Detective Shearer said that he called the number but that the phone went to voice mail and he did not leave a message. Detective Shearer testified that appellant was the only person who Mwangi thought was a possible suspect in the case. Detective Shearer said that the police obtained a warrant for appellant's arrest and that appellant was arrested on October 1 or 2, 2008.

The defense called Jackson as a witness. Jackson testified that she met appellant at night at the swimming pool at the Exchange. She said that appellant had a dog with him. Appellant told Jackson that he was going to a party later that night, and Jackson told appellant that she would watch his dog for him when he went to the party. Later, appellant brought his dog to her apartment, but he did not go to a party. Jackson said that appellant also brought a Play Station and video games to her apartment. She said that appellant set up the game system in Mwangi's room and played video games while Mwangi was in the room. Jackson testified that, the next morning, Mwangi told her that appellant had spent the night. Mwangi denied during her testimony that appellant went into her room, set up a Play Station in her room, or spent the night.

5

Jackson also testified that she believed appellant was crazy. She said that she was afraid of him.

*Jury Argument*

Appellant argues in his first issue that the trial court erred by overruling his objection to the prosecutor's jury argument and by denying his motion for new trial based on the allegedly improper jury argument. Proper jury argument generally falls within four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Esquivel v. State*, 180 S.W.3d 689, 692 (Tex. App.—Eastland 2005, no pet.). Counsel is allowed wide discretion in drawing inferences from the record that are reasonable, fair, legitimate, and offered in good faith. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). We review a trial court's denial of a motion for new trial for an abuse of discretion. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

Appellant complains that the prosecutor engaged in improper jury argument during the guilt/innocence phase by asking the jurors to place themselves in the shoes of the victim. The following exchange took place during the complained-of jury argument:

> [PROSECUTOR]: Imagine if you had a conversation with a guy and you were trying to be polite and say I don't really like you like that. I don't really appreciate it and I don't really like you like that. And the next thing that happens is you find yourself pushed up against --
>
> [DEFENSE COUNSEL]: Your Honor, I object to the improper argument. She is putting the jury in the shoes of the defendant.[1] It's improper.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: Imagine if you find yourself pushed up against a rail and the next thing that happens is you report that to the police and you come outside the next morning and your car is painted up. And then the next thing that happens is your phone rings is [sic] and you answer it and the voice you recognize on the other end says I'm going to fix up your car again. And imagine if you go outside and your car is painted again or it's keyed up, scratched all over. Imagine the terror. All from a man she had known less than a week. A guy who seemed perfectly normal to everybody -- for a minute. That's what this case is about, that's what we are here about, is what happened to her. And everything you need

---

[1]Defense counsel intended to state "shoes of the victim" instead of "shoes of the defendant."

to know is right here in this piece of paper. And I'm certain that after you listen to argument and the twelve of you go back in that room and you really think about this, like twelve reasonable, ordinary people, there is no other conclusion that you can come to but that that man is guilty of what he's accused of doing.

The trial court held a hearing on appellant's motion for new trial. At the hearing, the trial court concluded that it should have sustained appellant's objection to the prosecutor's jury argument but that the error was harmless. Therefore, the trial court denied appellant's motion for new trial.

In *Torres v. State*, 92 S.W.3d 911 (Tex. App.—Houston [14th Dist.] 2002, pet ref'd), the court provided a thorough analysis of cases involving jury arguments in which prosecutors asked the jurors to place themselves in the shoes of the victim. As explained in *Torres*, a prosecutor engages in improper argument in the punishment phase when the prosecutor "[asks] the [jurors] to place themselves in the shoes of the victim to consider what punishment the victim would want to impose upon the defendant." *Id.* at 922–23. Such arguments are improper because they request the jury "to assess punishment not on impartial objective notions of justice, but upon personal passion accelerated by the outrage every human being naturally feels toward one who has wrongfully caused him pain, embarrassment, grief, or loss." *Id.* at 922. For example, arguments are improper if they invite jurors, in assessing punishment, to consider how they would feel if their children had been murdered or if their house had been firebombed and they had seen their children on fire. *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985); *Boyington v. State*, 738 S.W.2d 704, 709 (Tex. App.—Houston [1st Dist.] 1985, no pet.). These types of arguments are improper because they amount to requests of the jurors to abandon their objectivity in assessing punishment. *Brandley*, 691 S.W.2d at 712.

However, the *Torres* court concluded that arguments asking the jurors to place themselves in the shoes of the victim for the purpose of understanding the terror and fear suffered by the victim are proper if they are based on reasonable deductions from the evidence. *Torres*, 92 S.W.3d at 922–24. We agree with the sound reasoning of *Torres*. Thus, an argument during the guilt/innocence phase describing a victim's fear of a defendant is proper. *Smith v. State*, 114 S.W.3d 66, 72 (Tex. App.—Eastland 2003, pet. ref'd). Also, an argument asking the jurors to imagine "what it was like to be that woman" in a sexual assault case is proper if it is a summation of the evidence or a reasonable deduction from the evidence. *Linder v. State*, 828 S.W.2d 290, 303 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). These types of arguments are proper because they focus on the impact of the defendant's conduct on the victim and do not

7

amount to asking the jurors to abandon their objectivity in reaching a verdict. *Torres*, 92 S.W.3d at 922–23; *Linder*, 828 S.W.2d at 303.

In this case, the prosecutor made the complained-of statements during argument in the guilt/innocence phase. We have summarized the evidence above. The prosecutor's argument requested the jurors to consider the terror experienced by Mwangi. We conclude that the argument that Mwangi was terrorized by appellant's conduct was a reasonable deduction from the evidence. The prosecutor did not request the jurors to abandon their objectivity in reaching a verdict but, instead, specifically requested the jury to "think about this, like twelve reasonable, ordinary people."

To obtain a stalking conviction, the State had to prove, among other things, that appellant's conduct caused Mwangi "to be placed in fear of bodily injury or death or fear that an offense [would] be committed against [her] property" and that it would cause a reasonable person "to fear bodily injury or death for himself or herself . . . or that an offense [would] be committed against the person's property." Section 42.072(a)(2), (3). The complained-of statements by the prosecutor related to the "fear" elements of the charged stalking offense: whether appellant's conduct placed Mwangi in such fear and would place a reasonable person in such fear. In essence, the prosecutor asked the jury to make a reasonable deduction from the evidence that appellant's conduct placed Mwangi in such fear and would place a reasonable person in such fear. Because the prosecutor's argument was a reasonable deduction from the evidence, we conclude that the argument was proper. Therefore, the trial court did not err by overruling appellant's objection to the argument or by denying appellant's motion for new trial. Appellant's first issue is overruled.

*Evidence of Extraneous Offenses*

Appellant argues in his second issue that the trial court erred by admitting evidence of the damage done to Mwangi's car on September 30, 2008, and October 11, 2008. Over appellant's objections, the State presented evidence that Mwangi's car was spray-painted on September 30, 2008, and that her car was "keyed" on October 11, 2008. These two incidents were not included in the indictment.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). However, if evidence has relevance apart from character conformity, Rule 404(b) permits the admission of

the evidence. *Id.* Even if evidence is admissible under Rule 404(b), the trial court may exclude the same evidence if it determines that the probative value of such evidence is substantially outweighed by its unfair prejudice. TEX. R. EVID. 403. Appellant contends that the evidence of extraneous offenses had no relevance apart from character conformity and that, therefore, it was inadmissible under Rule 404(b). Alternatively, appellant contends that the trial court should have excluded the evidence under Rule 403.

Assuming without deciding that the admission of the extraneous offense evidence was error, we find any error to be harmless. The erroneous admission of evidence of an extraneous offense is nonconstitutional error. *Johnson v. State*, 84 S.W.3d 726, 729 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.). Accordingly, we must disregard the error unless it affects appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Roethel*, 80 S.W.3d at 281. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App, 1997). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Our review of the entire record includes reviewing any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with the other evidence in the case. *Id.* We may also consider the jury instructions, the State's theory and any defensive theories, the emphasis placed on the erroneously admitted evidence, closing arguments, and voir dire, if applicable. *Id.* at 355–56.

The State presented ample evidence of appellant's guilt. The trial court charged the jury on three of the acts that the indictment alleged appellant had committed: (1) that, on or about September 24, 2008, appellant pushed Mwangi into a metal rail; (2) that, on or about September 24, 2008, appellant painted Mwangi's car; and (3) that, on or about September 25, 2008, appellant told Mwangi that he was going to "f--k up [her] car."

Mwangi and Sam both testified about the incident at the HKC. Mwangi said that "[appellant] was in [her] face yelling at her" and that her friends escorted her out of the HKC. Likewise, Sam testified that appellant was really mad and was yelling at Mwangi. Mwangi said

that, the next night, she met appellant by the pool at the apartment complex. She testified that appellant pushed her and caused her to fall onto a guard rail at the complex. Mwangi immediately reported the incident to the police on September 24, 2008. The next morning, Mwangi discovered that her car had been spray-painted. Mwangi reported the incident to the police, and an officer took pictures showing the spray paint on Mwangi's car. Mwangi testified that she received a threatening call from appellant after her car was spray-painted. She told Sergeant O'Rear that, during the call, appellant told her that "[he was] going to f--k up [her] car again for f-----g with [his] cousin." Mwangi testified that she was not having problems with anyone but appellant when her car was damaged.

As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the jury was free to believe Mwangi's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Hawkins v. State*, 283 S.W.3d 429, 433–34 (Tex. App.—Eastland 2009, pet. ref'd). As demonstrated by its verdict, the jury believed her testimony. The extraneous offense evidence related to the spray-painting of Mwangi's car on September 30, 2008, and the "keying" of her car on October 11, 2008. Like the September 24, 2008 spray-painting incident, no one witnessed either of these acts. Thus, the State did not present any eyewitness testimony relating to the extraneous offenses. Had eyewitness testimony been available and had a witness testified that he or she saw appellant commit either of the extraneous offenses, it could be plausibly argued that the extraneous offense evidence influenced the jury in finding that appellant also spray-painted Mwangi's car on September 24, 2008, and committed the other acts alleged in the indictment. Eyewitness testimony relating to either of the extraneous offenses could have increased the credibility of Mwangi's testimony. However, in the absence of such eyewitness testimony, and considering the record in its entirety, we have fair assurance that any error in admitting the extraneous offense evidence did not have a substantial and injurious effect or influence on the jury's verdict. *See Casey*, 215 S.W.3d at 885. Accordingly, we hold that any error is harmless and should be disregarded. *See* Rule 44.2(b). The jurors simply chose to believe Mwangi's testimony. Appellant's second issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

July 19, 2012

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.