Opinion filed July 19,
2012

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00184-CR 

                                                    __________

 

                         SHOKO
LANARDO CROWLEY, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 278th District Court

 

                                                           Walker
County, Texas

 

                                                      Trial
Court Cause No. 24865 

 



 

M
E M O R A N D U M   O P I N I O N

            The
jury convicted Shoko Lanardo Crowley of stalking.  The trial court assessed his
punishment at confinement for a term of eight years.  We affirm.

Issues
on Appeal

            Appellant
does not challenge the sufficiency of the evidence to support his conviction. 
Appellant presents two issues for review.  In his first issue, appellant
contends that the trial court erred by overruling his objection to the State’s
jury argument during the guilt/innocence phase and by denying his motion for
new trial that was based on the allegedly improper jury argument.  In his
second issue, appellant contends that the trial court erred by admitting
evidence of two extraneous offenses.

The
Charged Offense

            The
State charged appellant with the offense of stalking under Section 42.072 of
the Penal Code.  See Tex. Penal Code
Ann. § 42.072 (West Supp. 2011).  Section 42.072 provides, in relevant
part, as follows:

        (a) A person
commits an offense if the person, on more than one occasion and pursuant to the
same scheme or course of conduct that is directed specifically at another
person, knowingly engages in conduct that:

 

         (1) the
actor knows or reasonably believes the other person will regard as threatening:

 

  (A) bodily injury
or death for the other person; [or]

     

  . . . .   

 

  (C) that an
offense will be committed against the other person’s property;

 

         (2) causes
the other person . . . to be placed in fear of bodily injury or death or fear
that an offense will be committed against the other person’s property; and

 

        (3) would
cause a reasonable person to fear:

 

    (A) bodily
injury or death for himself or herself; [or]

 

     . . . .

 

     (C) that an
offense will be committed against the person’s property.

 

Id. §
42.072(a).

            In
this case, the indictment identified four specific acts allegedly committed by
appellant: (1) that, on or about September 24, 2008, appellant pushed Tanya
Mwangi into a metal rail; (2) that, on or about September 26, 2008,
appellant told Mwangi that he was going to shoot her; (3) that, on or about
September 25, 2008, appellant told Mwangi that he was going to “f--k up [her]
car”; and (4) that, on or about September 24, 2008, appellant painted Mwangi’s car. 
The State presented evidence supporting the first, third, and fourth alleged
incidents.  The State did not present any evidence in support of the second alleged
incident, and the trial court did not include the second incident in its charge
to the jury.

The
Evidence at Trial

            Although
appellant does not challenge the sufficiency of the evidence to support his
conviction, we will summarize the evidence to provide context for the issues on
appeal.  

In
the fall of 2008, Mwangi was a student at Sam Houston State University in
Huntsville.  Mwangi testified that, at that time, she lived in an apartment at
the Exchange of Huntsville student apartment complex.  One evening in September
2008, Mwangi’s roommate, Lauren Jackson, introduced Mwangi to appellant at the
pool at the apartment complex.  Mwangi later learned that Jackson had given
Mwangi’s cell phone number to appellant.

The
following day, appellant sent Mwangi text messages and called her.  Mwangi
testified that the text messages were friendly.  Mwangi said that, the next
day, she and appellant talked again.  She said that appellant asked her for
directions to the Health and Kinesiology Center (HKC) on the campus of Sam
Houston State University.  Mwangi said that there were two gyms in the HKC. 
After talking with appellant, Mwangi went to the HKC and watched a basketball
game to kill some time before her next class began.  Mwangi testified that she
saw appellant at the HKC about thirty minutes after she got there.  Mwangi said
that appellant told her he had been calling her but that she had not answered
her phone.  She testified that, before she could explain to appellant that
there was no cell phone reception in the HKC, “he was in [her] face” and yelling
at her.  Mwangi said that some of her friends, including Joseph Sam, escorted
her out the back door of the HKC and that she then went to her class.  Sam
testified that appellant followed Mwangi out the back door.  Sam said that
appellant was really mad and was yelling at Mwangi.  Mwangi testified that appellant’s
conduct at the HKC scared her and that she did not know if appellant was going
to hit her.

Mwangi
also testified that appellant texted her after the incident at the HKC.  She
did not reply to his text messages.  Mwangi said that she called appellant the
following day and asked him to meet her at the pool at the Exchange because she
wanted to tell him that she did not want to be his girlfriend.  Mwangi wanted
to meet appellant at the pool because it was a public place.  She said that
appellant met her at the pool.  Mwangi testified that appellant appeared to be
agitated and that he became angry.  Mwangi said that she told appellant she did
not want to be his friend and that appellant responded, “[I]f you’re not my
friend you’re my enemy.”  At that point, Mwangi turned around and walked toward
her apartment.  She said that appellant followed her from the pool area into a
stairwell and that, as appellant followed her, he called her “all kinds of
names” and cursed at her.  Mwangi testified that appellant pushed her and that
she fell onto a guard rail.  Mwangi hurt her side in the incident.  She got up,
ran to her car, and then drove to the police station. The record shows that
Mwangi reported this incident to the police on September 24, 2008, at about
10:30 p.m.  At the station, Mwangi told an officer what had just happened and
also what had happened at the HKC the day before.  Sam and some of his friends
met Mwangi at the police station.  Sam testified that Mwangi was upset at the
police station.  Mwangi testified that, after she talked with the officer, Sam
rode with her back to her apartment complex.  When they arrived at the complex,
Mwangi went straight to her apartment.  Sam accompanied her to the apartment
and then left.

            Mwangi
said that, when she saw her car the following morning, she discovered that it
had been spray-painted with white paint.  She reported the spray-painting
incident to the police on September 25, 2008, at about 8:45 a.m. Huntsville
Police Officer Mat McDaniel went to Mwangi’s apartment and took a criminal
mischief report from Mwangi.  Officer McDaniel took pictures showing the spray
paint on Mwangi’s car.  Mwangi testified that she received a threatening phone
call from appellant after her car was spray-painted.  On September 26, 2008, just
after midnight, Mwangi called the police to report that she had received the
threatening call.  Sergeant David O’Rear of the Huntsville Police Department went
to Mwangi’s apartment to meet with her.  Sergeant O’Rear testified that Mwangi
believed that appellant was the person who had spray-painted her car.  Mwangi
told Sergeant O’Rear that appellant had called her and said, “[B]itch, I’m
going to f--k up your car again for f-----g with my cousin.”  Mwangi told
Sergeant O’Rear that appellant had pushed her against a rail at the apartment
complex.  Mwangi showed Sergeant O’Rear injuries on her right side, and he took
pictures of her right side. 

Mwangi
testified that she started getting phone calls from a private (blocked)
number.  She said that she got a “whole bunch of phone calls” from the private
number.  Mwangi said that she did not answer the calls.  Mwangi testified that
appellant’s conduct scared her and her roommates.  Mwangi said that she bought
a knife and pepper spray because she thought that appellant was going to attack
her.

            On
September 30, 2008, Mwangi’s car was spray-painted again while she was at work
at Hastings.  At about 9:30 a.m. that morning, Huntsville Police Officer Joe
Thornton was dispatched to Hastings on a report of criminal mischief.  After
arriving at Hastings, Officer Thornton spoke with Mwangi.  She believed that
appellant had spray-painted her car.  Officer Thornton said that he saw
metallic gold spray paint on Mwangi’s car.  He took pictures of the car.

Mwangi
said that, on another occasion, her car had been “keyed” while she was at work. 
Huntsville Police Officer Kurt Bubela testified that, on October 11, 2008, he
was dispatched to Hastings in reference to a criminal mischief call.  He
arrived at Hastings and talked with Mwangi.  Officer Bubela also looked at Mwangi’s
car.  Officer Bubela testified that he observed “deep” scratches on the
driver’s side of Mwangi’s car and that her car had been “keyed.”  Officer Bubela
took pictures of the car.  Mwangi believed that appellant had “keyed” her car. 
Mwangi testified that, during the time period that was relevant to this case,
she did not have problems with anyone but appellant.

Huntsville
Police Detective Gary Shearer testified that he became involved in the
investigation of this case on September 29, 2008.  On that date, Detective
Shearer met with Mwangi.  At that time, Mwangi was afraid.  Mwangi gave
appellant’s phone number to the police department.  Detective Shearer said that
he called the number but that the phone went to voice mail and he did not leave
a message.  Detective Shearer testified that appellant was the only person who
Mwangi thought was a possible suspect in the case.  Detective Shearer said that
the police obtained a warrant for appellant’s arrest and that appellant was
arrested on October 1 or 2, 2008.

The
defense called Jackson as a witness.  Jackson testified that she met appellant
at night at the swimming pool at the Exchange.  She said that appellant had a
dog with him.  Appellant told Jackson that he was going to a party later that night,
and Jackson told appellant that she would watch his dog for him when he went to
the party.  Later, appellant brought his dog to her apartment, but he did not
go to a party.  Jackson said that appellant also brought a Play Station and
video games to her apartment.  She said that appellant set up the game system
in Mwangi’s room and played video games while Mwangi was in the room.  Jackson
testified that, the next morning, Mwangi told her that appellant had spent the
night.  Mwangi denied during her testimony that appellant went into her room,
set up a Play Station in her room, or spent the night.

            Jackson
also testified that she believed appellant was crazy.  She said that she was
afraid of him.

Jury
Argument

            Appellant
argues in his first issue that the trial court erred by overruling his
objection to the prosecutor’s jury argument and by denying his motion for new
trial based on the allegedly improper jury argument.  Proper jury argument
generally falls within four areas: (1) summation of the evidence; (2)
reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; or (4) plea for law enforcement.  Brown v. State, 270 S.W.3d
564, 570 (Tex. Crim. App. 2008); Esquivel v. State, 180 S.W.3d 689, 692
(Tex. App.—Eastland 2005, no pet.).  Counsel is allowed wide discretion in
drawing inferences from the record that are reasonable, fair, legitimate, and
offered in good faith.  Shannon v. State, 942 S.W.2d 591, 597 (Tex.
Crim. App. 1996).  We review a trial court’s denial of a motion for new trial
for an abuse of discretion.  Holden v. State, 201 S.W.3d 761, 763 (Tex.
Crim. App. 2006); Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App.
1995).

            Appellant
complains that the prosecutor engaged in improper jury argument during the
guilt/innocence phase by asking the jurors to place themselves in the shoes of
the victim.  The following exchange took place during the complained-of jury
argument:

            [PROSECUTOR]:
Imagine if you had a conversation with a guy and you were trying to be polite
and say I don’t really like you like that.  I don’t really appreciate it and I
don’t really like you like that.  And the next thing that happens is you find
yourself pushed up against --

 

            [DEFENSE
COUNSEL]: Your Honor, I object to the improper argument.  She is putting the
jury in the shoes of the defendant.[1] 
It’s improper.

 

            THE
COURT: Overruled.

 

            [PROSECUTOR]:
Imagine if you find yourself pushed up against a rail and the next thing that
happens is you report that to the police and you come outside the next morning
and your car is painted up.  And then the next thing that happens is your phone
rings is [sic] and you answer it and the voice you recognize on the other end
says I’m going to fix up your car again.  And imagine if you go outside and
your car is painted again or it’s keyed up, scratched all over.  Imagine the
terror.  All from a man she had known less than a week.  A guy who seemed
perfectly normal to everybody -- for a minute.  That’s what this case is about,
that’s what we are here about, is what happened to her.  And everything you
need to know is right here in this piece of paper.  And I’m certain that after
you listen to argument and the twelve of you go back in that room and you
really think about this, like twelve reasonable, ordinary people, there is no
other conclusion that you can come to but that that man is guilty of what he’s
accused of doing.

 

The trial court
held a hearing on appellant’s motion for new trial.  At the hearing, the trial
court concluded that it should have sustained appellant’s objection to the
prosecutor’s jury argument but that the error was harmless.  Therefore, the
trial court denied appellant’s motion for new trial.

            In Torres
v. State, 92 S.W.3d 911 (Tex. App.—Houston [14th Dist.] 2002, pet ref’d),
the court provided a thorough analysis of cases involving jury arguments in
which prosecutors asked the jurors to place themselves in the shoes of the
victim.  As explained in Torres, a prosecutor engages in improper
argument in the punishment phase when the prosecutor “[asks] the [jurors] to
place themselves in the shoes of the victim to consider what punishment the
victim would want to impose upon the defendant.”  Id. at 922–23.  Such
arguments are improper because they request the jury “to assess punishment not
on impartial objective notions of justice, but upon personal passion
accelerated by the outrage every human being naturally feels toward one who has
wrongfully caused him pain, embarrassment, grief, or loss.”  Id. at
922.  For example, arguments are improper if they invite jurors, in assessing
punishment, to consider how they would feel if their children had been murdered
or if their house had been firebombed and they had seen their children on
fire.  See Brandley v. State, 691 S.W.2d 699, 712 (Tex. Crim. App.
1985); Boyington v. State, 738 S.W.2d 704, 709 (Tex. App.—Houston [1st
Dist.] 1985, no pet.).  These types of arguments are improper because they
amount to requests of the jurors to abandon their objectivity in assessing
punishment.  Brandley, 691 S.W.2d at 712.

            However,
the Torres court concluded that arguments asking the jurors to place
themselves in the shoes of the victim for the purpose of understanding the terror
and fear suffered by the victim are proper if they are based on reasonable
deductions from the evidence.  Torres, 92 S.W.3d at 922–24.  We agree
with the sound reasoning of Torres.  Thus, an argument during the
guilt/innocence phase describing a victim’s fear of a defendant is proper.  Smith
v. State, 114 S.W.3d 66, 72 (Tex. App.—Eastland 2003, pet. ref’d).  Also,
an argument asking the jurors to imagine “what it was like to be that woman” in
a sexual assault case is proper if it is a summation of the evidence or a
reasonable deduction from the evidence.  Linder v. State, 828 S.W.2d
290, 303 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d).  These types of
arguments are proper because they focus on the impact of the defendant’s
conduct on the victim and do not amount to asking the jurors to abandon their
objectivity in reaching a verdict.  Torres, 92 S.W.3d at 922–23; Linder,
828 S.W.2d at 303.

            In
this case, the prosecutor made the complained-of statements during argument in
the guilt/innocence phase.  We have summarized the evidence above.  The
prosecutor’s argument requested the jurors to consider the terror experienced
by Mwangi.  We conclude that the argument that Mwangi was terrorized by
appellant’s conduct was a reasonable deduction from the evidence.  The
prosecutor did not request the jurors to abandon their objectivity in reaching
a verdict but, instead, specifically requested the jury to “think about this, like
twelve reasonable, ordinary people.”

To
obtain a stalking conviction, the State had to prove, among other things, that
appellant’s conduct caused Mwangi “to be placed in fear of bodily injury or
death or fear that an offense [would] be committed against [her] property” and
that it would cause a reasonable person “to fear bodily injury or death for
himself or herself . . . or that an offense [would] be committed against the
person’s property.”  Section 42.072(a)(2), (3).  The complained-of statements
by the prosecutor related to the “fear” elements of the charged stalking
offense: whether appellant’s conduct placed Mwangi in such fear and would place
a reasonable person in such fear.  In essence, the prosecutor asked the jury to
make a reasonable deduction from the evidence that appellant’s conduct placed
Mwangi in such fear and would place a reasonable person in such fear.  Because
the prosecutor’s argument was a reasonable deduction from the evidence, we
conclude that the argument was proper.  Therefore, the trial court did not err
by overruling appellant’s objection to the argument or by denying appellant’s
motion for new trial.  Appellant’s first issue is overruled.

Evidence
of Extraneous Offenses

Appellant
argues in his second issue that the trial court erred by admitting evidence of the
damage done to Mwangi’s car on September 30, 2008, and October 11, 2008.  Over
appellant’s objections, the State presented evidence that Mwangi’s car was
spray-painted on September 30, 2008, and that her car was “keyed” on October
11, 2008.  These two incidents were not included in the indictment.

Evidence
of other crimes, wrongs, or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  Tex. R. Evid. 404(b).  However, if
evidence has relevance apart from character conformity, Rule 404(b) permits the
admission of the evidence.  Id.  Even if evidence is admissible under
Rule 404(b), the trial court may exclude the same evidence if it determines
that the probative value of such evidence is substantially outweighed by its
unfair prejudice.  Tex. R. Evid.
403.  Appellant contends that the evidence of extraneous offenses had no
relevance apart from character conformity and that, therefore, it was inadmissible
under Rule 404(b).  Alternatively, appellant contends that the trial court
should have excluded the evidence under Rule 403.

Assuming
without deciding that the admission of the extraneous offense evidence was
error, we find any error to be harmless.  The erroneous admission of evidence
of an extraneous offense is nonconstitutional error.  Johnson v. State,
84 S.W.3d 726, 729 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d); Roethel
v. State, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.).  Accordingly,
we must disregard the error unless it affects appellant’s substantial rights.  See
Tex. R. App. P. 44.2(b); Roethel,
80 S.W.3d at 281.  A substantial right is affected when the error had a
substantial and injurious effect or influence on the jury’s verdict.  Casey
v. State, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App, 1997).  Substantial rights are not
affected by the erroneous admission of evidence if, after examining the record
as a whole, we have fair assurance that the error did not influence the jury,
or had but a slight effect.  Motilla v. State, 78 S.W.3d 352, 355 (Tex.
Crim. App. 2002).

Our
review of the entire record includes reviewing any testimony or physical
evidence admitted for the jury’s consideration, the nature of the evidence
supporting the verdict, the character of the alleged error, and how the error
might be considered in connection with the other evidence in the case.  Id. 
We may also consider the jury instructions, the State’s theory and any
defensive theories, the emphasis placed on the erroneously admitted evidence,
closing arguments, and voir dire, if applicable.  Id. at 355–56.

The
State presented ample evidence of appellant’s guilt.  The trial court charged
the jury on three of the acts that the indictment alleged appellant had
committed: (1) that, on or about September 24, 2008, appellant pushed Mwangi
into a metal rail; (2) that, on or about September 24, 2008, appellant
painted Mwangi’s car; and (3) that, on or about September 25, 2008, appellant
told Mwangi that he was going to “f--k up [her] car.”

Mwangi
and Sam both testified about the incident at the HKC. Mwangi said that
“[appellant] was in [her] face yelling at her” and that her friends escorted
her out of the HKC.  Likewise, Sam testified that appellant was really mad and
was yelling at Mwangi.  Mwangi said that, the next night, she met appellant by
the pool at the apartment complex.  She testified that appellant pushed her and
caused her to fall onto a guard rail at the complex.  Mwangi immediately reported
the incident to the police on September 24, 2008.  The next morning, Mwangi
discovered that her car had been spray-painted.  Mwangi reported the incident to
the police, and an officer took pictures showing the spray paint on Mwangi’s
car.  Mwangi testified that she received a threatening call from appellant
after her car was spray-painted.  She told Sergeant O’Rear that, during the
call, appellant told her that “[he was] going to f--k up [her] car again for
f-----g with [his] cousin.”  Mwangi testified that she was not having problems
with anyone but appellant when her car was damaged.

As
the sole judge of the credibility of the witnesses and the weight to be given
their testimony, the jury was free to believe Mwangi’s testimony.  Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Hawkins v. State, 283 S.W.3d
429, 433–34 (Tex. App.—Eastland 2009, pet. ref’d).  As demonstrated by its
verdict, the jury believed her testimony.  The extraneous offense evidence
related to the spray-painting of Mwangi’s car on September 30, 2008, and the
“keying” of her car on October 11, 2008.  Like the September 24, 2008
spray-painting incident, no one witnessed either of these acts.  Thus, the
State did not present any eyewitness testimony relating to the extraneous
offenses.  Had eyewitness testimony been available and had a witness testified
that he or she saw appellant commit either of the extraneous offenses, it could
be plausibly argued that the extraneous offense evidence influenced the jury in
finding that appellant also spray-painted Mwangi’s car on September 24, 2008,
and committed the other acts alleged in the indictment.  Eyewitness testimony
relating to either of the extraneous offenses could have increased the
credibility of Mwangi’s testimony.  However, in the absence of such eyewitness
testimony, and considering the record in its entirety, we have fair assurance that
any error in admitting the extraneous offense evidence did not have a
substantial and injurious effect or influence on the jury’s verdict.  See
Casey, 215 S.W.3d at 885.  Accordingly, we hold that any error is harmless
and should be disregarded.  See Rule 44.2(b).  The jurors simply chose
to believe Mwangi’s testimony.  Appellant’s second issue is overruled.  




 

This
Court’s Ruling

            The judgment of the
trial court is affirmed.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE


                                  

July 19, 2012

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









                [1]Defense counsel intended to state “shoes of the victim”
instead of “shoes of the defendant.”